```
                                              USDC SDNY
                                              DOCUMENT
                                              ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                  DOC #:_____
SOUTHERN DISTRICT OF NEW YORK                 DATE FILED: 12/05/2022
```

------------------------------------------------------------- X
ANGELA RUCKER and STEPHEN RUCKER,        :
                                         :
                        Plaintiffs,      :
                                         :      22-CV-717 (VEC)
            -against-                    :
                                         :      OPINION & ORDER
                                         :
IQ DATA INTERNATIONAL, INC.,             :
                                         :
                        Defendant.       :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiffs Angela Rucker and Stephen Rucker sued Defendant IQ Data International, Inc. ("IQ Data") for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and for defamation, negligence, and negligence per se. *See* Am. Compl., Dkt. 52. Defendant moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), improper venue pursuant to Rule 12(b)(3), and for failure to state a claim pursuant to Rule 12(b)(6). Def. Mot., Dkt. 60; Def. Mem., Dkt. 59. Plaintiffs cross-moved to treat Defendant's 12(b)(6) motion as one for summary judgment or, in the alternative, to exclude matter outside the pleadings, and for leave to file a second amended complaint. Pls. Cross Mot., Dkt. 64. Defendant has also moved for attorneys' fees and costs associated with Plaintiffs' previously denied motion to remand the case to New York Supreme Court. *See* Def. Mot., Dkt. 39; Def. Mem. for Fees, Dkt. 38. For the reasons stated below, Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED, Plaintiffs' motion for leave to file a second amended complaint is DENIED, Defendant's motion for attorneys' fees and costs is DENIED, and all other motions are DENIED as moot.

1

I.    BACKGROUND[1]

IQ Data is a debt collector. Am. Compl. ¶¶ 33–36. It is incorporated and has its principal place of business in the state of Washington. Def. Mem. at 9–10, Dkt. 59. Plaintiffs are individuals who currently reside in New York but who resided in Texas during the relevant period. *See* Tr. 7:10–8:1, Dkt. 35. According to Defendant, in 2018, Plaintiffs leased an apartment from Cobb Hill Apartments ("Cobb Hill") in Frisco, Texas. Def. Mem. at 2. In May 2019, Cobb Hill retained IQ Data to collect a judgment Cobb Hill had obtained against Plaintiffs for unpaid rent. *Id.* at 3. After multiple attempts to contact Plaintiffs, IQ Data received a letter purportedly from Angela Rucker's then-counsel demanding that IQ Data cease contact with Angela Rucker; the letter stated that Angela Rucker's address was 1116 Cypress Hill Dr., Little Elm, TX. *Id.* at 3; Ex. A at 11, Dkt. 59-1.

Plaintiffs allege that they are not liable for the debt IQ Data is attempting to collect. Am. Compl. ¶¶ 37–40. Plaintiffs also allege that IQ Data reported the disputed debt to consumer reporting agencies, which caused "costs, loss of credit opportunities, . . . stress," and prevented Plaintiffs from obtaining housing in New York. *Id.* ¶¶ 22, 42.

On January 4, 2022, Plaintiffs brought suit in New York Supreme Court against IQ Data alleging violations of the FDCPA, negligence, and negligence per se. *See* Compl., Dkt 1-1.[2] On April 8, 2022, Defendant moved to dismiss Plaintiffs' complaint for lack of personal jurisdiction

---

[1]    The facts as alleged in the Amended Complaint are accepted as true. They are, however, very bare bones, leaving the Court to fill in the gaps by relying in large part on Defendant's filings and the information gleaned from the parties' initial pretrial conference, during which Plaintiffs' counsel asserted that Plaintiffs now reside in New York and admitted that the debt being collected was incurred in Texas. *See* Tr. 7:10–8:1, Dkt. 35.

[2]    IQ Data removed the action to federal court based on Plaintiffs' complaint presenting a federal question. *See* Notice of Removal at 1, Dkt. 1. On March 28, 2022, this Court denied Plaintiffs' motion to remand. Order, Dkt. 32; Tr. 4:14-17, 6:6-9, 22-23.

and improper venue. *See* Def. Mot. to Dismiss, Dkt. 37. In response, Plaintiffs filed an amended complaint adding cursory jurisdictional and factual allegations as well as a claim for defamation; Defendant's motion to dismiss was denied as moot. *See* Am. Compl., Dkt. 43; Order, Dkt. 47.[3]

On June 13, 2022, Defendant moved to dismiss the Amended Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. *See* Def. Mem.. When Plaintiffs failed to timely oppose Defendant's motion, the Court, *sua sponte*, extended Plaintiffs' response deadline to July 22, 2022. *See* Order, Dkt. 63. On July 21, 2022, Plaintiffs "responded" by cross-moving to treat Defendant's 12(b)(6) motion as one for summary judgment or, in the alternative, to exclude matters outside the pleadings, and for leave to file a second amended complaint. *See* Pls. Cross Mot., Dkt. 64. The cross-motion did not oppose the motion to dismiss, nor did it include a proposed Second Amended Complaint. *See id.*

## II.   DISCUSSION

### A.   IQ Data's Motion to Dismiss for Lack of Personal Jurisdiction Is Granted

Plaintiffs allege that IQ Data is registered with the New York Department of State and that IQ Data has "been doing ongoing business in this judicial district." Am. Compl. ¶¶ 14, 20. IQ Data moves to dismiss for lack of personal jurisdiction, arguing that its principal place of business is in Washington State, it is incorporated in Washington, and the events giving rise to Plaintiffs' suit occurred in Texas. *See* Def. Mem. at 7–13.

---

[3] Plaintiffs first filed their Amended Complaint on May 16, 2022, but failed to include a redline of the Amended Complaint as required by the Court's Individual Practices. Order, Dkt. 47. Accordingly, on May 27, 2022, the Court ordered Plaintiffs to file an amended complaint that complied with the Court's Individual Practices by May 31, 2022. Order, Dkt. 51. Plaintiffs again filed the amended complaint on May 31, 2022, but the purported "redline" of the complaint again failed to reflect a true substantive comparison between the allegations in the original complaint and those in the Amended Complaint. *See* Am. Compl., Dkt. 52. Plaintiffs have yet to comply with this Court's Individual Practices with respect to filing a proper redlined version of their Amended Complaint.

To adjudicate the merits of a case, the court must have personal jurisdiction over the defendant. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). The plaintiff has the burden of establishing that the Court has personal jurisdiction over the defendant. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). At the pleading stage, a plaintiff need only make a prima facie showing that jurisdiction exists. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008). While courts must construe the jurisdictional allegations in the light most favorable to the plaintiff, *see A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993), the Court need not accept either party's legal conclusions as true, nor will it draw "argumentative inferences" in either party's favor, *see Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation omitted). A plaintiff "must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone." *Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)); *see also Penguin Grp. (USA) Inc. v. Am. Buddha,* 609 F.3d 30, 34–35 (2d Cir. 2010) (stating that a prima facie showing of jurisdiction "entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant" (cleaned up)). Here, Plaintiffs fail to state any non-conclusory allegations that would allow the Court to exercise personal jurisdiction over IQ Data.

### 1. Plaintiffs Have Failed to Establish that This Court Has General Jurisdiction Over IQ Data

General, or "all-purpose," jurisdiction allows a court to adjudicate any cause of action against the defendant, regardless of where it arose. *Brown*, 814 F.3d at 624. An out-of-state corporation is subject to general jurisdiction in a state "only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). Other than in "exceptional case[s]," a corporation is "at home" only in its state of incorporation and in the state of its principal place of business. *Id.*

Plaintiffs neither allege that New York is IQ Data's principal place of business nor that IQ Data is incorporated in New York. Rather, Plaintiffs allege only that IQ Data is registered to do business with the New York Department of State and has transacted business in New York since May 2007. Am. Compl. ¶¶ 14, 20. It is settled law that mere registration to do business under New York's business statutes is insufficient to establish general jurisdiction in New York. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 499 (2d Cir. 2020); *Aybar v. Aybar*, 93 N.Y.S.3d 159, 170 (2d Dep't 2019) (rejecting longstanding judicial construction by New York and federal courts interpreting registering to do business in New York as consenting to general jurisdiction), *aff'd*, 37 N.Y.3d 274 (2021).

Plaintiffs further allege, with no supporting facts, that IQ Data "resides in this judicial district." Am. Compl. ¶ 24.[4] IQ Data, on the other hand, claims, without opposition, that it is incorporated and has its principal place of business in Washington State. Def. Mem. at 10. Because Plaintiffs have failed to meet their burden of making a prima facie showing, the Court cannot conclude that Defendant is "at home" in New York for purposes of general jurisdiction.

### 2. Plaintiffs Have Failed to Establish that This Court Has Specific Jurisdiction Over IQ Data

Specific jurisdiction "is available when the cause of action sued upon arises out of the defendant's activities in a state." *Brown*, 814 F.3d at 624; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Specific jurisdiction over a non-resident defendant is governed by the law of the state in which the federal court sits and by the limits of due process. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). Accordingly, the Court must engage in a "two-part analysis." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). The Court first looks to the long-arm statute of New York, the forum state. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). If the exercise of jurisdiction is appropriate under New York's long-arm statute, the Court must then decide whether such an exercise comports with due process; a state may authorize personal jurisdiction over an out-of-state defendant only if "the defendant has certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend

---

[4] Plaintiffs appear to conflate residency for venue purposes with the requirements for establishing personal jurisdiction. *See* Am. Compl. ¶¶ 24–27. Plaintiffs must establish personal jurisdiction independently of venue. *See United States ex rel. Rudick v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969); *see also Wang v. Tavernier*, 2014 WL 11353150 at *5 (S.D.N.Y. Sept. 26, 2014), *aff'd sub nom. Fen Wang v. Tavernier*, 621 F. App'x 83 (2d Cir. 2015).

traditional notions of fair play and substantial justice." *Daimler AG*, 571 U.S. at 126 (cleaned up).

### a. New York's Long-Arm Statute[5]

New York C.P.L.R. § 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: transacts any business within the state or contracts anywhere to supply goods or services in the state." Section 302(a)(1) has two requirements: (1) the defendant must transact business within New York, and (2) the cause of action must "arise from" that business activity. *Licci ex rel.*, 732 F.3d at 168. Section 302(a)(1) is a "single act statute," which means that "proof of one transaction in New York is sufficient to invoke jurisdiction." *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (cleaned up). Section 302(a)(3) of the long-arm statute applies if the defendant has "committed a tortious act outside New York," the cause of action "arise[s] from that tortious act," and the act "caused injury to a person or property within New York." *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 325–26 (S.D.N.Y. 2013).

Plaintiffs do not allege any jurisdictional facts that would satisfy either provision of New York's long-arm statute. Plaintiffs allege that "Defendant has been doing ongoing business in this judicial district since May 2007," and "Defendant's ongoing and continuous business activities in this district constitute minimum contacts in this district and subject Defendant to the personal jurisdiction under this Court." Am. Compl. ¶¶ 20–22. Those conclusory allegations are inadequate. Plaintiffs do not allege what business Defendant has been continuously doing in

---

[5] For simplicity, and because Plaintiffs have not offered any theory for personal jurisdiction, only C.P.L.R. §§ 302(a)(1) and 302(a)(2) are discussed because these are the only provisions of New York's long-arm statute that plausibly could apply.

New York nor how Plaintiffs' complaint arises from those activities. *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 400 (S.D.N.Y. 2021) (dismissing for want of jurisdiction because "Plaintiffs' complaint is devoid of a single factual allegation that [defendant] transacted any business in New York"). Plaintiffs allege, also in an entirely conclusory fashion, that they are unable to "obtain housing" or "obtain credit opportunities in this district due to Defendants' conduct." Am. Compl. ¶¶ 23–24. But it remains a mystery what Defendant did to prevent Plaintiffs from "obtain[ing] housing" or "credit opportunities" in New York: Plaintiffs do not allege, for example, to whom Defendant reported the alleged debt, nor how Defendant's conduct caused Plaintiffs' harm. A conclusory allegation that Defendant caused Plaintiffs harm in New York is inadequate to allege that Defendant's conduct satisfies New York's long-arm statute.

### b. Due Process Analysis

Even if Plaintiffs' woefully pled complaint satisfied the long-arm statute, they fail to show that exercising jurisdiction over IQ Data would comport with due process. The Due Process Clause of the Fourteenth Amendment forbids the exercise of personal jurisdiction over a non-domiciliary unless the non-resident defendant has purposefully created sufficient minimum contacts with the forum state "that maintenance of the suit [would] not offend traditional notions of fair play and substantial justice." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 149 (2d Cir. 2019). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Here, Plaintiffs fail to make any showing that IQ Data has sufficient minimum contacts with New York to satisfy traditional notions of fair play and substantial justice. In fact, it appears that all of the events leading to this suit occurred in Texas and Washington. *See* Def.

Mem. at 2–3.[6]  Plaintiffs do not allege any suit-related conduct by Defendant in New York. Plaintiffs allege only that "Defendant has been doing ongoing business in this judicial district since May 2007." Am. Compl. ¶ 20. Because the minimum contacts analysis requires that Defendant's business in the forum be related to the suit at hand, *Walden*, 571 U.S. at 284, and because Plaintiffs have not alleged that Defendant engaged in any conduct vis-à-vis the Plaintiffs in New York, Plaintiffs have not met their burden of showing that the exercise of personal jurisdiction would comport with due process.

In sum, even if New York's long-arm statute applied, exercising personal jurisdiction over Defendant would violate due process. Accordingly, the motion to dismiss for lack of personal jurisdiction is granted.

### B. Plaintiffs' Motion for Leave to Amend Is Denied

Rather than oppose Defendant's motion to dismiss, Plaintiffs cross-moved for leave to file a second amended complaint.[7] *See* Pls. Cross Mot. Pursuant to Fed. R. Civ. P. 15(a)(1), a

---

[6]   As discussed in Section I, *supra*, Defendant is a debt collector that purportedly attempted to collect back rent and court costs from Plaintiffs on behalf of Plaintiffs' former landlord in Texas. Defendant maintains that all communications were sent to addresses in Texas. *See* Def. Mem. at 2–3; *see also* Tr. 10:7-11. Defendant's version of events has not been challenged by Plaintiffs and is corroborated by copies of the letters sent by Defendant to Plaintiffs and a declaration from Dane Hill, Director of Operations at IQ Data. *See* Ex. A, Dkt. 59-1.

[7]   Plaintiffs also cross-moved to treat Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as one for summary judgment under Fed. R. Civ. P. 56. Pls. Cross Mot. When a defendant moves to dismiss for failure to state a claim, the defendant generally may not include exhibits unless they are part and parcel of the complaint; if the defendant includes materials outside of the complaint, the Court must treat the motion to dismiss as one for summary judgment if the Court wishes to consider those materials. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(2) is different: a court may consider materials outside the pleadings in connection with such motions. *See Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015). Defendant's motion to dismiss included a declaration from IQ Data's Director of Operations, a transcript of the parties' initial pre-trial conference held on March 28, 2022 (also available at docket entry 35), e-mail communications between the parties, and a slip copy of a case cited in Defendant's brief. *See* Def. Mot. Exs. A, C–E; *see also* Pls. Mem. at 2, Dkt. 66. Because Defendant relied on these materials only for its jurisdictional arguments, those exhibits do not require the Court to convert the motion to dismiss into a motion for summary judgment.

party may amend its pleading once as a matter of course within 21 days of serving it or 21 days after service of a motion under Rule 12(b).  Thereafter, Fed. R. Civ. P. 15(a)(2) applies, which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Leave, however, is within the sound discretion of the District Court and may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

Throughout this litigation, Plaintiffs have demonstrated difficulty with adhering to the Federal Rules and this Court's orders and practices.  After the Court denied Plaintiffs' motion to remand, on April 8, 2022, Defendant moved to dismiss for lack of personal jurisdiction and improper venue, *see* Def. Mot., Dkt. 37, thereby putting Plaintiffs on notice that their complaint faced jurisdictional challenges.  On April 20, 2022, the Court granted Plaintiffs' request to extend the deadline to oppose the motion to dismiss to May 13, 2022, or, alternatively, to file an amended complaint.  Order, Dkt. 42.  Plaintiffs, however, ignored the Court's order and instead filed an Amended Complaint on May 16, 2022.[8]  *See* Am. Compl., Dkt. 43; Mot. for Ext., Dkt. 44; Order, Dkt. 47.  Despite the untimely filing — and repeated failure to follow the Court's Individual Practices with respect to filing a redlined copy of amended pleadings — the Court

---

[8] Plaintiffs did not seek leave to adjourn their deadline until the day of their untimely filing, counter to the Court's Individual Practices that require requests for adjournment to be made 48 hours *prior* to the deadline the party is seeking to adjourn.  *See* Mot. for Ext., Dkt. 44; Rule 2(C), Caproni, J., Individual Pracs.  Plaintiffs also failed to follow the Court's Individual Practices by neglecting to attach a proper redlined version of the Amended Complaint as an exhibit to their filing.  *See* Order, Dkt. 51.  Accordingly, Plaintiffs were directed to refile the Amended Complaint in compliance with the Court's rules.  *See* Dkts. 51–52.  Plaintiffs filed another purportedly redlined version of the Amended Complaint but it, too, was not in compliance with the Court's Individual Rules.  *See* Am. Compl., Dkt. 52.

accepted the Amended Complaint and denied Defendant's first motion to dismiss as moot. Order, Dkt. 47.  On June 13, 2022, Defendant again moved to dismiss.  Def. Mot..  Plaintiffs' deadline to respond to Defendant's motion was June 30, 2022, Order, Dkt. 63, but Defendant's motion went unanswered.  The Court, *sua sponte*, extended Plaintiffs' deadline to oppose the motion to July 22, 2022.  *Id.*; *see also* Def. Reply at 2, Dkt. 67 ("Plaintiffs did not oppose IQ Data's motion by June 30, 2022, as the Court ordered.  Plaintiffs never moved for an extension of time, and never provided the Court with any reasons for its failure to comply with the Court's deadlines.").

On July 21, 2022, rather than opposing the motion to dismiss, Plaintiffs cross-moved to treat Defendant's motion as one for summary judgment and for leave to file a second amended complaint pursuant to Rule 15(a)(2).  Pls. Cross Mot.  Plaintiffs argued that "justice . . . requires leave" to file a second amended complaint because "Plaintiffs are prepared to amend their pleadings"; despite having an additional month to respond to Defendant's motion to dismiss, the purported "second amended complaint [was] not fully drafted to submit" as of July 21, 2022. Pls. Mem. at 4, Dkt. 66.  Rather than filing their proposed Second Amended Complaint, let alone previewing what it would allege in their memorandum in support of their cross-motion, Plaintiffs merely asserted, *ipse dixit*, that they were "prepared" to "fill in blanks that Defendant says are missing."  Pls. Mem. at 3.  Plaintiffs have given the Court no indication of the facts they would add if given yet another bite at the apple.  Without a proposed amended complaint against which to assess futility, the Court concludes that this is just a delay tactic and that leave to amend would indeed be futile.  *See, e.g.*, *Gregory v. ProNAI Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (summary order) (affirming denial of leave to amend where "plaintiffs sought leave to amend" and "included no proposed amendments"); *Porat v. Lincoln Towers Cmty. Ass'n,* 464

11

F.3d 274, 276 (2d Cir. 2006) (finding no abuse of discretion in denying leave to amend when Plaintiff "did not advise the district court how the complaint's defects would be cured").

Accordingly, Plaintiffs' motion for leave to file a second amended complaint is denied because amendment would be futile.[9]

### C. IQ Data's Motion for Attorneys' Fees Is Denied

On April 8, 2022, IQ Data moved for attorneys' fees and costs arguing that Plaintiffs abused the litigation system by filing a complaint "devoid of any jurisdictional allegations" and a "frivolous motion for remand" to "harass IQ Data into settling [the] case." Def. Mem. for Fees at 1. Defendant argues that Plaintiffs' counsel has a history of filing cases "in an improper jurisdiction and venue," *id.* at 10, and that the Court should award fees to the Defendant pursuant to 28 U.S.C. § 1927 and the Court's inherent power,[10] *id.* at 1. Plaintiffs failed to properly or timely oppose the motion. *See* Order, Dkt. 42; Endorsement, Dkt. 58.

Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." A court may also

---

[9] In the alternative to leave to amend, Plaintiffs move for an extension of time pursuant to Fed. R. Civ. P. 12(a)(4)(A). But Rule 12(a)(4)(A) governs the alteration of the timeline for a party to file a "responsive pleading" — i.e., "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer," Fed. R. Civ. P. 7(a) — after a court has denied that party's Rule 12 motion. In other words, if the Court were to deny Defendant's motion to dismiss, Defendant should have, pursuant to Rule 12(a)(4)(A), a minimum of 14 days to file its answer to Plaintiffs' complaint. *See, e.g.*, *Gen. Mills, Inc. v. Kraft Foods Glob., Inc.*, 495 F.3d 1378 (Fed. Cir. 2007) (interpreting "these periods of time" in Rule 12(a)(4) to refer to the periods of time enumerated in Rules 12(a)(1)–(3)). Rule 7(a) does not, as Plaintiffs suggest, contemplate an additional timeframe for Plaintiffs to "respond to Defendant's pending motion(s)" to dismiss. *See* Pls. Mem. at 4.

[10] "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

impose sanctions, pursuant to its inherent power, when an attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). The Court's inherent power to issue sanctions, however, should be exercised "with restraint and discretion" and requires a "particularized showing of bad faith." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991). When deciding whether to impose sanctions under the Court's inherent authority and pursuant to § 1927, the "court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997). An improper purpose may be implied when the "attorney's actions are so completely without merit as to require [that] conclusion." *Int'l Bhd. of Teamsters*, 948 F.2d at 1345.

The Court finds that Plaintiffs' motion for remand was entirely meritless. *See* Tr. 6:21–25, 8:13–14. The Court, however, does not find that sanctions are warranted. Defendant urges the Court to find that Plaintiffs intended to "harass" IQ Data to settle and avoid litigation costs. Def. Mot. for Fees at 1. Defendant has provided no evidence, however, to support a finding that Plaintiffs' goal was to harass Defendant as opposed to counsel simply not adequately considering the legal authority for the motion. If Defendant's assertion is correct — that Plaintiffs' counsel engages in a pattern or practice of filing actions in improper venues to drive up costs and force settlement — it is not (yet) borne out by the record Defendant presented.[11] Accordingly,

---

[11] The Court notes, however, that in at least one other case that is pending before the Hon. Brian Cogan in the Eastern District of New York, Plaintiffs' counsel has attempted a similarly meritless maneuver to remand a case to state court despite the complaint alleging a violation of the FCDPA. *See* Dkt. 8, *Hakobyan v. Midland Credit Mgmt., Inc.*, 1:22-CV-05609-BMC.

13

Defendant's motion for attorneys' fees and costs is denied. The Court warns Plaintiffs' counsel, however, that should he appear again before the Undersigned with similarly meritless, poorly-researched motions unsupported by fact or law, the Court will be hard-pressed not to impose sanctions.

### III.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED. Plaintiffs' motion for leave to amend their complaint is DENIED. Defendant's motion for attorneys' fees and costs, Dkt. 39, is DENIED. All other motions are DENIED as moot.

The Clerk of Court is respectfully directed to terminate the open motions at docket entries 39 and 64 and to close the case.

**SO ORDERED.**

Date:  December 5, 2022  
New York, NY

_____  
**VALERIE CAPRONI**  
**United States District Judge**